IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:21-mj-04070 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| WILLIE WHITE | ) | |

## MEMORANDUM OPINION

Pending before the Court is the Government's "Motion for Revocation of Release Order and Motion for Leave to File Brief in Support of Motion (Doc. No. 52, "Motion for Revocation"). Via the Motion for Revocation, the Government asks the Court[1] in pertinent part and pursuant to 18 U.S.C. § 3145(a)(1), to revoke the Magistrate Judge's release order and conditions of release that the Magistrate Judge announced in open court on May 12, 2021 and thereafter explained in writing in a memorandum opinion (Doc. No. 60). That is to say, via the Motion for Revocation, the Government seeks both the revocation of the Magistrate Judge's order to release Defendant and the corresponding grant of the Government's motion for detention (Doc. No. 6, "Motion for Detention") that was denied via the Magistrate Judge's release order.

The Government here moved for detention[2] pursuant to 18 U.S.C. § 3142(f)(2)(A), which provides:

(f) Detention hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably

---

[1] Herein, the term "the Court" at times refers specifically to the undersigned district judge as opposed to the assigned Magistrate Judge whose order is being reviewed.

[2] Notably, the Government phrased its motion as one for *detention* even though, as noted below, it probably is more accurately characterized as (at least primarily) a motion for a detention *hearing*.

assure the appearance of such person as required and the safety of any other person and the community—

. . .

> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—

> (A) a serious risk that such person will flee . . . .

18 U.S.C. § 3142(f)(2)(A).

Thus, the Motion for Detention was based solely on the notion that Defendant's case "involve[d] a serious risk that [Defendant] would flee,"[3] *i.e.*, that Defendant posed a serious "flight risk."[4] And even though the Government, at the detention hearing granted by the Magistrate Judge pursuant to the Motion for Detention, could have asserted danger to other persons or the community as an alternative basis to detain Defendant even without having grounded its motion for detention on that basis,[5] the Government ultimately did not do so. Unsurprisingly, the Court does not find that it somehow would be justified in *sua sponte* finding detention warranted under 18 U.S.C. § 3142(e) & (f) on the ground that there was clear and convincing evidence that Defendant posed a danger to other persons or the community. The Motion for Detention, and thus

---

[3] In the actual content of the Motion for Detention, the Government explicitly asserted only that "Defendant is a flight risk," (Doc. No. 6 at 1), and not that Defendant is (or that the case involved) a *serious* flight risk.

[4] As indicated, the here-relevant statutory term—the only relevant statutory term—in 18 U.S.C. § 3142(f)(2)(A) is "flee." There is no explicit statutory reference to "flight" at all. In this context, courts typically take the statutory verb "flee" and treat it as having the noun form, "flight." This means, significantly for an understanding of the discussion herein and in the case law generally, that to refer to a defendant posing a risk of "flee[ing]" is to refer to a defendant posing a risk of "flight" or ("flight risk"), and vice versa. *See* Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 683 (2018) ("Flight risk is properly assigned to defendants who are expected to flee a jurisdiction."). For these reason, at times herein, the Court uses the terms "flight risk", "risk of flight" "serious flight risk" or "serious risk of flight," in quotation marks, as if these precise terms were used in the statute, in lieu of the actual statutory term ("[serious] risk that [the defendant] will flee.").

[5] *See United States v. Comberger*, No. 5:21-MJ-05138-MAS-1, 2021 WL 1725516, at *1 (E.D. Ky. Apr. 30, 2021) (noting that 18 U.S.C. § 3142(f) "outlin[es] the preliminary showings required to trigger a detention hearing but characterize[es] the hearing's ultimate inquiry as 'whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required *and the safety of any other person and the community*'") (emphasis added).

the Motion for Revocation, is solely about risk of flight and the related but (as discussed below) distinct notion of risk of non-appearance (and the mitigation thereof).

In denying the Motion for Detention and ordering Defendant's release, the Magistrate Judge found, in summary, that the Government had "not met its burden to show by a preponderance of the evidence that any risk that [Defendant] would not appear at future court proceedings cannot be addressed by conditions of release." (Doc. No. 60 at 13). She announced conditions of release that, in her view, would reasonably assure the appearance of Defendant at future court proceedings. (*Id.* at 13-14).

The Court will not begin by setting forth a boilerplate framework for the adjudication of motions for detention. That is because, given the issue(s) raised by Defendant, this opinion will explore in considerable detail what that framework actually is. The Court's initial observations regarding the law will be limited to a notation of the standard for the Court's review of the Magistrate Judge's decision. The applicable standard of review is *de novo*. "Review of the Magistrate Judge's decision is *de novo*, 'although the district court "may conduct its review and base its decision on the evidence presented to the magistrate at the detention hearing."'" *United States v. Zapien*, No. 3:14-CR-00037-1, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014) (quoting *United States v. Stokes*, No. 3:06-cr-00204, 2006 WL 3843589, at *1 (M.D. Tenn. Dec. 22, 2006) (citation omitted)).

The Court next proceeds to identify the issue(s) raised herein concerning the applicable framework for the Court to use in deciding, *de novo*, whether the Motion for Detention should be granted.

In ruling in Defendant's favor by denying the Motion for Detention, the Magistrate Judge described the analytical framework as follows:

The Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., governs the federal courts' decisions to release or detain a defendant before trial. Under the Act's terms, a "judicial officer shall order the pretrial release of [a defendant] on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court finds personal recognizance or an unsecured bond "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person" subject to the conditions that she or he not commit another offense while on release, submit a DNA sample if required by law, and "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *Id.* § 3142(c), (c)(B). Section 3142(f) of the Act identifies seven categories of offenses for which the court, on the United States' motion or its own motion, shall hold a detention hearing to make this determination.

(Doc. No. 60 at 1-2). As the Magistrate Judge further noted, (Doc. No. 60 at 3 n.1), one of the categories of offenses (or, to be more precise, categories of *circumstances*)[6] in which a detention hearing is authorized is when there is a "motion of the attorney for the Government . . . in a case that involves a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A).[7] Significantly and perhaps surprisingly, the structure of the applicable statutory sentence indicates that the "motion" to which the statute here refers is probably more accurately considered primarily a motion for a detention *hearing*—which, essentially, in turn encompasses an implicit underlying

---

[6] The Magistrate Judge referred to "seven categories of offenses" for which a detention hearing is authorized. The Court thinks of these instead as seven categories of *cases*, *i.e.*, cases involving any of the five categories of offenses specified in 18 U.S.C. § 3142(f)(1)(A)-(E), plus cases involving the two situations set forth in 18 U.S.C. § 3142(f)(2)(A) & (B) (namely, the existence of serious risk of flight and the existence of danger to other persons or the community.. As indicated below in quoted case law, however, other courts refer to these categories as "circumstances" rather than "offenses" or "cases," and older opinions sometimes state that there are six of these because the seventh was not added until 2006 (via Public Law 109-248)).

[7] Notably, in this context, courts typically use the word "flee"—as opposed to, for example, "fly"—to refer to the verb form of the noun "flight." This means, significantly for an understanding of the discussion herein, that to refer to a defendant posing a risk of fleeing is to refer to a defendant posing a risk of flight. *See* Gouldin, *supra* note 4, at 683 ("Flight risk is properly assigned to defendants who are expected to flee a jurisdiction.").

motion for *detention*[8]—rather than a motion for detention as such; as suggested below, this observation is not mere hair-splitting, because the Government actually needs first to show entitlement to a detention *hearing* before even having a shot at prevailing on the underlying request for detention.

Defendant takes issue with none of what the Magistrate Judge said. But Defendant essentially focuses much greater attention than did the Magistrate Judge upon the threshold issue of whether a detention *hearing* was even authorized to begin with. Defendant effectively raised this issue before the Magistrate Judge, arguing that the Government was not authorized to seek detention in the first place, because it had not even claimed in its motion (let alone demonstrate in advance of the hearing) that Defendant posed a serious risk of flight. (Doc. No. 59 at 5-6).[9] The Magistrate Judge seemingly assumed that a detention hearing was authorized, and accordingly held a detention hearing before deciding the ultimate issue implicated in the detention motion (*i.e.*, obviously, whether Defendant should be detained under 18 U.S.C. § 3142) in Defendant's favor. Defendant asserts, however, that Defendant should prevail alternatively (and primarily) for a different reason: that the Government is not entitled to a detention hearing to begin with and thus loses its bid for detention before even having an opportunity to satisfy the standards that it would need to satisfy were it actually entitled to a detention hearing.

Defendant's assertion contemplates the existence of a very significant step in the analysis in cases in which the Government has filed a motion for a detention hearing (which the

---

[8] For this reason, the Court will not quibble with characterizing a motion under 18 U.S.C. § 3142(f)(2)(A) as being one for *detention*, and indeed it will do so itself at times herein in fact for ease of reference.

[9] Defendant's counsel pointed out that, as noted above in a footnote, the Government had alleged only a "flight risk"—not a *serious* flight risk, which according to Defendant's counsel, is something "beyond an ordinary flight risk." (Doc. No. 59 at 5-6). Given that the Court finds that the Government has not *demonstrated* as required a serious flight risk, it declines to address whether the Government should have been denied a detention hearing because it had not explicitly *alleged* a "serious" flight risk.

Government typically phrases as a motion for detention itself) under Section 3142(f)(2)(A): explicitly answering the question of whether the Government is even entitled to a detention hearing in the first place. The question is whether Defendant's assertion is correct. To support his assertion, Defendant appropriately cites *United States v. Gibson*, 384 F. Supp. 3d 955 (N.D. Ind. 2019), which the Court quotes below. But he goes off track in relying on a particular quote from *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) and on *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). As discussed below in a footnote, these cases actually do *not* stand for the proposition that the Government, to even get a detention hearing in the first place, must establish that a risk (or serious risk of likelihood) that the defendant will flee. The question is whether the Court should accept the proposition set forth in *Gibson*, a single, non-precedential, district court decision. To answer that question, the Court has reviewed a swath of additional case law. The Court answers that question in the affirmative, for the reasons set forth below.

1. To prevail on a motion for detention under 18 U.S.C. § 3142(f)(2)(A), the Government must (1) first properly predicate the motion on a "serious risk of flight" and (2) then establish by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required *i.e.*, reasonably mitigate the risk of non-appearance.

To that question, a recent decision from a district court within this circuit answers a resounding "yes."

> The Court is authorized to conduct a detention hearing (*i.e.*, to consider whether to detain Defendant) only if the Government first establishes that one of the circumstances listed in Title 18, United States Code, Section 3142(f) exists. *See United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("In other words, § 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [six circumstances listed in (f)(1)(A), (f)(1)(B), (f)(1)(C), (f)(1)(D), (f)(2)(A) and (f)(2)(B) ]."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("After a motion for detention has been filed, the district court must undertake a two-step inquiry . . . . It must first determine by a preponderance of the evidence . . . that the defendant has either been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice."); *United States v. Ploof*, 851 F.2d

7, 11 (1st Cir. 1988) ("[T]he structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."). In this case, the parties agree that the only basis for a detention hearing is the Government's assertion that there is a serious risk Defendant will flee. *See* 18 U.S.C. § 3142(f)(2)(A)[.]

*United States v. Mendoza-Balleza*, 420 F. Supp. 3d 716, 716-17 (E.D. Tenn. 2019)*; see also United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) ("Presented with a motion for detention, the Court undertakes a two-step inquiry. First, the court must determine whether the Government has established by a preponderance of the evidence that [the defendant] . . . presents a risk of flight or obstruction of justice. If the Government carries this initial burden, the Court must determine whether there are reasonable conditions.") (citations and internal quotation marks omitted). Like *Madoff*,[10] *Mendoza-Balleza* indicates that the second step is not even reached if the first step is not satisfied:

> Because the Court finds the Government has not satisfied its burden to show it is entitled to a detention hearing, the Court makes no finding as to whether there is any condition or combination of conditions that will reasonably assure the appearance of a person as required and the safety of the community under Title 18, United States Code, Section 3142(g).

*Mendoza-Balleza*, 420 F. Supp. 3d at 718 n.1.

*Mendoza-Balleza* and *Madoff* do not stand alone. A district court recently explained, persuasively, that there was indeed a two-step process:

> If the Court is satisfied that the government has sustained its burden under § 3142(f)(2)(A) of establishing serous risk of flight by a preponderance of the evidence, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991), the detention hearing may proceed, with the analysis focused on whether there are conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) . . . .

---

[10] *Mendoza-Balleza* goes further than *Madoff* in emphasizing that if the Government fails to satisfy step one, it not only loses its bid for detention, but also is not (or, looking at this retrospectively, never was) entitled to a detention hearing at all.

When addressing a § 3142(f)(2)(A) motion for detention based on risk of flight, the Court's initial determination whether to conduct a detention hearing at all may not be based on findings of dangerousness. If a serious risk of flight is not established, "[d]anger to the community present in the likelihood defendant would continue to commit offenses . . . could be considered only in setting conditions of release." Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists.

*United States v. Salgado*, No. CR 20-53JJM, 2020 WL 4747931, at *3–4 (D.R.I. Aug. 17, 2020)

(some internal quotation marks omitted).[11]

And a case like *United States v. Wright*, No. 2:18-CR-336-DN, 2018 WL 3496642 (D. Utah July 20, 2018), conveys that before even having a shot at obtaining *detention* pursuant to a motion brought under 18 U.S.C. § 3142(f)(2)(A), the Government first must prevail (with some degree of evidentiary showing) on its motion for a detention pursuant to 18 U.S.C. § 3142(f)(2)(A):

When asked about whether the Court could release Mr. Wright, the Government moved for a detention pursuant to 18 U.S.C. § 3142(f)(2)(A), namely that Mr. Wright posed a serious risk of flight. In support of its motion for a detention hearing, the Government proffered a January 5, 2018 warrant issued for failure to appear on misdemeanor charges for possession or use of a controlled substance and drug paraphernalia. Defense counsel argued that one failure to appear did not rise to the level of serious risk of flight and that Defendant did not know about the hearing date, causing him to miss it. Therefore, argued Defense Counsel, the Government was not entitled to a detention hearing, and the Court had to release Mr. Wright on conditions. The Court agrees that if it finds the Government has not met the threshold conditions under § 3142(f), it cannot hold a detention hearing and thus cannot detain the Defendant.

. . .

No case law appears to provide guidance about the quantum of evidence needed to show a serious risk of flight sufficient to warrant the holding of a

---

[11] The court noted, however, that if the Government is indeed entitled to a detention hearing based on a serious risk of flight, the court conceivably could find detention warranted if it were to determine, "based on the facts, proffer, testimony, and argument presented," that release of the defendant would constitute a danger to the community or a person in the community. *Salgado*, 2020 WL 4747931, at *3–4. That is to say, in appropriate cases, the Government conceivably could prevail at step two based on a finding of danger to other persons or the community in lieu of a finding that the risk of non-appearance could not be adequately mitigated by one or more conditions of release. But in the present case, as noted above, there is no basis for the Court to find at step two (if it were to be reached) that detention is warranted based on such danger..

detention hearing. The Court found the [Government's] proffer of [a] January 2018 failure to appear for court sufficient to warrant a detention hearing under § 3142(f)(2)(A) given the recency of the failure.

*Id.* at *1-2.

Of course, none of these decisions constitutes binding precedent for this Court. In terms of binding precedent, the Court has not encountered any clear direction from the Supreme Court or the Sixth Circuit precisely addressing whether the district court, as a prerequisite even to holding a detention hearing sought under Section 3142(f)(2)(A), must find a "serious risk of flight." But the Sixth Circuit did indicate unmistakably in *United States v. Hardon*, No. 98-1625, 1998 WL 320945 (6th Cir. June 4, 1998), that the district court must indeed make a threshold determination that a detention hearing is in fact authorized under 18 U.S.C. § 3142(f). The opinion was short and is set forth in full immediately below:

The defendant appeals the May 20, 1998 order of the district court denying his motion for revocation of a pretrial detention order. He is charged in a two-count indictment with unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). His trial is scheduled to begin on June 8, 1998. Based on a review of the briefs of the defendant and the government, we unanimously determine that oral argument is not needed and reverse the ruling of the district court.

The Bail Reform Act provides that a defendant may be detained pending trial only if certain findings are made after a detention hearing. 18 U.S.C. § 3142(e) and (f). Section 3142(f) authorizes a detention hearing if one of the six circumstances set forth in § 3142(f)(1)(A)-(D) and (f)(2)(A)-(B) are met. *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir.1992). The magistrate judge and the district court concluded that this case involves a crime of violence, permitting a detention hearing under § 3142(f)(1)(A). The sole issue presented in this appeal is whether possession of a firearm and ammunition by a convicted felon are crimes of violence for the purposes of § 3142(f)(1)(A).

The Bail Reform Act defines a crime of violence to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). Possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1), by their nature, do not involve such a risk. *See United States v. Gloster*, 969 F. Supp. 92, 95 (D.D.C.1997).

> The May 20 order denying the motion for revocation of the detention order
> is REVERSED**,** and the case is REMANDED to the district court to set conditions
> of release. The mandate will issue immediately.

*Id.* at 1. *Hardon* thus teaches that a detention hearing is authorized only "if one of the six [now seven] circumstances set forth in § 3142(f)(1)(A)-(D) and (f)(2)(A)-(B) are met." *Id.* It further teaches that if such circumstances are not present, a detention hearing (and, thus, detention) is simply unauthorized, regardless of how the Government would fare with respect to risk of non-appearance and danger to other persons or the community. Ergo, if the circumstance alleged by the Government is "serious risk of flight," a "serious risk of flight" must actually be present for the Government to be entitled to a detention hearing.

Although the Government did not take a position on this issue in this case, it did in *United States v. Castellanos-Almendares*, No. 19-CR-80144, 2019 WL 3937862 (S.D. Fla. Aug. 20, 2019). There, the Government adopted the position that the Court adopts here, *i.e.*, that there is a two-step analysis:

> In response, the Government maintained that 18 U.S.C. § 3142(f) establishes when
> the Court should hold a detention hearing, while 18 U.S.C. § 3142(g) contains the
> factors to be considered by the Court in determining whether to detain the
> defendant. According to the Government, the triggering mechanism for holding a
> hearing in this case is serious risk of flight under 18 U.S.C. § 3142(f)(2)(A), but,
> once there is a basis to hold a detention hearing, the Court is required to consider if
> any conditions of release would ensure the safety of the community and the
> appearance of Defendant pursuant to 18 U.S.C. § 3142(g).
>
> . . .
>
> The Court agrees with the Government's reading of the federal pretrial detention
> statute.

*Id.* at *2.

The Court agrees with these cases, and with Professor Gouldin, who writes, "The [Bail Reform] Act does not appear to permit a detention hearing based solely on general nonappearance

risk, and the rule is clear: a detention hearing must be held [or alternatively, the Court would note, be waived by the defendant] in order to detain a defendant until trial." Gouldin, *supra* note 4, at 701–02.

Congress could have drafted the statute so as to omit any requirement for detention that the case involve a "serious risk of flight" and to direct courts to require only that the case involve a risk of non-appearance (that cannot adequately be mitigated by conditions of release). It did not do so. And so the Court gives effect to Congress's prescription of separate requirement of a "serious flight risk." It exists, even if courts and litigants historically have not paid much attention to it.

In short, to obtain detention, the Government first must obtain an authorized detention hearing, which it cannot do under Section 3142(f)(1)(A) unless the case "involves a serious risk that [the defendant] will flee"; if (but only if) the Government obtains an authorized detention hearing, it can obtain a detention order, provided that it can show that no conditions of release can reasonably secure the appearance of the defendant.

2. The Court must determine independently, rather than accept carte blanche the Government's representation, that the case involves a serious risk of flight so as to warrant a detention hearing.

One might accurately perceive that in common practice, if the Government files a motion for detention under 18 U.S.C. § 3142(f)(2)(A) based on alleged serious risk of flight, the Government gets its detention hearing, with no questions asked about the appropriateness of holding the detention hearing. That is to say, the defendant typically does not challenge the Government's right to a detention hearing, and, as a result, the court understandably does not do so (*sua sponte*) either. Instead, the parties and the court typically proceed straight to the question of whether any risk of non-appearance can be adequately mitigated by one or more conditions of

release. That may work fine when the defendant does not challenge the Government's right to a detention hearing, in which case arguably the defendant has waived (or, more likely, forfeited) the right to object to a hearing; in such cases, there may be no remaining requirement for the Court to make any finding at step one in order to have a detention hearing, because any such requirement may be waived or forfeited. But as noted, Defendant here has made such a challenge, asserting that the Government has no right to a detention hearing, because the case does not involve a "serious risk of flight." So the Court must determine the substantive and procedural prerequisites for holding a detention hearing when such a challenge is made.

One might be tempted to assume that the Government's invocation of Section 3142(f)(2)(A) is conclusive as to whether it is entitled to a detention hearing. One might assume, that is, that if the Government claims via its motion that the case "involves a serious risk of flight," the claim is self-effectuating; the Government injects the issue of whether the case involves a serious risk of flight and, presto, the case thereafter necessarily "involves" a serious risk of flight, thus affording the Government the desired detention hearing. Any prevalence of such an assumption might explain why challenges are rare to the holding of a detention hearing or the threshold assertion that the case involves a serious risk of flight. But it is not a safe assumption.

In fact, the case law referenced above suggests that a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue. In *Hardon*, for example, the Sixth Circuit reversed the district court on the grounds that the district court improperly found the presence of one of the six categories of circumstances—that the defendant was charged with "a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"—under which a detention hearing is authorized. Very likely,

the district court made this finding not *sua sponte*, but rather in response to the Government's assertion in its motion for detention that the case *did* involve such circumstances. If it was error for the district court to make the finding it made, then it would be error for the district court to accept the Government's assertion that its motion for detention was properly grounded on the existence of such circumstances. *Hardon* thus appears to teach that the district court must make its own determination of whether the circumstances relied on by the Government actually exist.

*Freidman* also indicates that the district must *find*—and that it is not enough merely for the Government to claim—that the case involves a serious risk of flight. *See Friedman*, 837 F.2d at 50 ("We also reject the government's claim that this case involved a serious risk that Friedman would obstruct justice as the district court has made no finding whatsoever on this issue.").[12] And as described above, *Wright* indicated that *evidence* (or at least concrete information proffered by the Government), and not mere conclusory assertions, of serious risk of flight are required to warrant the holding of a detention hearing. *See* 2018 WL 3496642, at *2.

One might be surprised by *Wright*'s (fairly recent) assertion that—even after so many years of motions for detention under the Bail Reform Act—there is no apparent guidance on the "quantum of evidence needed to show a serious risk of flight," *id.*, that is, the standard proof the court must find satisfied before finding a serious risk of flight to justify a detention hearing. And *Wright* does appear to overstate the absence of guidance. True, there indeed is not much guidance, perhaps because so often, as noted, the Government's right to a detention hearing goes unquestioned by all involved whenever the Government's motion for detention invokes 18 U.S.C. § 3142(f)(2)(A). But there is some guidance.

---

[12] This portion of *Friedman* related to a Government motion under Section 3142(f)(2)(B) but is clearly applicable to a Government motion under Section 3142(f)(2)(A).

*Friedman* states that the standard is preponderance of the evidence. 837 F.2d at 49 ("After a motion for detention has been filed, the district court must undertake a two-step inquiry. It must first determine by a preponderance of the evidence, that the defendant . . . presents a risk of flight [.]") (citation omitted). To like effect, *Salgado* held that the government bears the "burden under § 3142(f)(2)(A) of establishing serous risk of flight by a preponderance." 2020 WL 4747931, at *3. Such a view strikes the Court as unexceptional, given that this is the recognized standard for the Government on so many motions (or particular aspects of motions) in criminal cases; it is, for example, the standard for step two, *i.e.*, establishing that no condition or set of conditions would adequately mitigate the risk of the defendant's non-appearance. The Court is satisfied that when the Government seeks detention pursuant to a motion filed under Section 3142(f)(2)(A), the Court must find by a preponderance of the evidence that the case involves a serious risk of flight.[13]

3. <u>A case involves a "serious risk of flight," as opposed to a mere risk of non-appearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings.</u>

To determine whether a case involves a "serious risk of flight," the court obviously needs to know what constitutes a "serious risk of flight."

In answering this question, the Court first notes that although "serious risk of flight" and risk of non-appearance have been prescribed by Congress as separate requirements, it is theoretically possible that they effectively amount to the same thing, with no real distinction

---

[13] It is not lost on the Court that although the "preponderance" standard is typically conceived in terms of a mathematical formulation—a "51 percent" or "50.1 percent" probability—this mathematical formula based on probabilities does not work so well where, as here, the question is actually not an objective one subject to an objective yes or no answer. The question of whether a case involves a "serious" risk of flight is a subjective one because the terms "serious" and "risk" are themselves subjective and somewhat ambiguous; their applicability is often in the eye of the beholder. That is, people can and do disagree about what is "serious," what is a "risk," and about what is a "serious risk." To speak in terms of the likelihood that such nebulous terms appropriately describe a given case is very different from speaking in terms of the likelihood that that an objective, factual question—*e.g.*, was that masked bank robber in fact the defendant?—should be answered in the affirmative. But to the extent that the courts are directed to apply probabilities to subjective questions regarding the applicability of terms like "risk" and/or "serious," the Court will do its very best to do so.

between the two. On the other hand, it is by no means necessarily true that a risk of non-appearance is the same thing as a risk of flight. *See United States v. Cornish*, 449 F. Supp. 3d 681, 684 (E.D. Ky. 2020) ("A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of the evidence."). It well may be that someone can pose a risk of "non-appearance" without posing a risk of "flight." The latter term seems to connote intentional and active movement to put oneself beyond the supervision of the court and the reach of criminal proceedings; this connotation is not inherent in the notion of "non-appearance," a term broad enough to cover negligent or other unintentional, and not just active and intentional, failures to appear. It would seem that "risk of flight" is a subset of "risk of non-appearance"—meaning that, depending on the circumstances suggesting a serious risk of non-appearance, a risk of non-appearance may not entail a risk of flight.

There is certainly a "relationship between the 'risk of flight' described in § 3142(f)(2)(A) as a precondition to a detention hearing, and the 'risk of nonappearance' which must be mitigated in § 3142(e) [if the precondition for a detention hearing is in fact met]." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1125 (N.D. Iowa 2018). But to say that there is a *relationship between* them is to say that there is a *distinction between* them. They are not the same thing. And as indicated above, each of the two must be established. As the court explained in *Gibson*, consistent with Defendant's argument (Doc. No. 62 at 5):

> "[R]isk of flight" is not the proper standard to apply when deciding to detain an individual. As discussed above, risk of flight or more precisely "serious risk of flight" is only what allows the government to move for detention in this case. While Congress chose to use "serious risk of flight" in subsection (f)(2)(A) to describe this limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward. Here, Congress did not use the term "flight" at all. Instead, it mandated that courts look to whether the government has met its burden to show that there is no condition or combination of

conditions that will "reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(g).

*Gibson*, 384 F. Supp. 3d at 965.

Courts are not always careful about recognizing, let alone giving effect to, this distinction. This is manifested not only in courts' analyses, but also their terminology, which often blurs the two concepts. *See* Gouldin, *supra* note 4, at 703 ("Indeed, judges talk in terms of 'flight risk' even in states where the statutes discuss only nonappearance."); *id.* at 687 ("[J]udges making bail determinations use the term 'flight risk' to refer to all nonappearance risks, whether or not the individual is actually likely to flee the jurisdiction. Scholars and reformers do the same."); *id.* at 682 ("Scholars, judges, and legislative drafters often use flight and nonappearance interchangeably.").

Realizing this reality, the court in *Gibson* noted that "[c]ourts frequently use the phrase 'risk of flight' while weighing the factors set forth in subsection (g) of § 3142[,]" which actually relate to whether the risk of *non-appearance*—not the risk of *flight*—can be adequately mitigated by conditions of release. 384 F. Supp. 3d at 965. To note just one example of courts' imprecision in the use of such terminology, in apparently referring specifically to what the Government had to prove (at step two) by a preponderance of the evidence at the detention hearing,[14] a district court fairly recently used the term "risk of flight" and "risk of non-appearance" interchangeably. *See United States v. Paniagua*, No. CR 5:18-074-DCR, 2019 WL 575378, at *2 (E.D. Ky. Feb. 12, 2019).[15] And the undersigned must confess that he surely has done likewise in the past.

---

[14] The district court omitted any reference to 18 U.S.C. § 3142(F)(2)(A) or its (separate, step one) requirement that the Government's motion be grounded on a "serious risk that [the defendant] will flee."

[15] *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986), is another example of this. There the Second Circuit stated that "[b]efore preventive detention may be ordered under § 3142(e), therefore, the court is obliged to determine both whether the defendant is likely to flee the jurisdiction if released, and whether any conditions of release will be reasonably certain to guard against this propensity to flee." Instead, the Second Circuit was (erroneously) equating the concept of risk of *flight* (which it here calls "propensity to flee") with the concept of risk

In short, the undersigned's review of case law reveals that in their analyses and terminology, courts quite frequently equate—rather than draw the appropriate distinction between—"serious risk of flight" and "risk of non-appearance." In fairness to courts, this is probably because the litigants rarely call this distinction to courts' attention, let alone rely on it in any way. And presumably in many cases the distinction would have proven to be one without a difference anyway. Even Defendant in this case, who has taken the unusual (in the undersigned's experience) and appropriate tack of relying on this distinction, claims that ultimately it makes no difference here because (according to Defendant) he would prevail at step two anyway.

But Defendant has squarely raised the issue of whether the Government's bid for detention fails at step one on the grounds that the case does not involve a "serious risk of flight." Accordingly, the Court next addresses what would constitute a "serious risk of flight" as opposed to a mere *risk of non-appearance*. It does so keenly aware that the question may be consequential indeed because the former term well may be substantially narrower than the latter, since "serious risk is narrower than "risk," and "risk of flight" appears to be a subcategory of "risk of non-appearance." *See* Gouldin, *supra* note 4, at 683 ("Flight risk is properly assigned to defendants who are expected to flee a jurisdiction. This is a small, and arguably shrinking, subcategory of a much larger group of defendants who pose risks of nonappearance.").

_____

of non-appearance; the latter risk is, by statute, the risk to be mitigated (if possible) by conditions of release, but the Second Circuit confusingly characterized that risk as a risk of "flee[ing], *i.e.,* flight.

    And *United States v. Portes*, 786 F.2d 758 (7th Cir. 1985) is yet another example of this. There the court stated that "The government also bears the burden of proving that no set of conditions will reasonably assure [the defendant's] appearance at the required times. The statute does not establish the quantum of proof by which the government must establish this risk of flight." *Id.* at 765. Manifestly, the Court here was confusing and/or incorrectly equating or inter-changing the concepts of risk of flight and risk of non-appearance.

    Defendant erroneously cites the above-referenced parts of *Berrios-Berrios* and *Portes* for the proposition that the Government must first show a "serious" risk to even obtain a detention hearing, before even reaching the issue of whether the risk of non-appearance can adequately be mitigated by conditions of release. In context, though, it is clear that neither case actually stands for this proposition, contemplates a two-step process, or recognizes any distinction between risk of flight and risk of non-appearance.

The Court concludes that the "flight risk" is indeed different from "risk of non-appearance," and that thus "serious flight risk" is that much more distinct from "risk of non-appearance." For this conclusion, the Court relies on the facial differences between the words of the respective terms themselves. It relies also upon the structure of the Bail Reform Act, which suggests an intentional differentiation between the two concepts. *See id.* at 701 ("The Bail Reform Act's detention provisions seem to draw an important distinction between nonappearance risk broadly and risk of flight more specifically[.] The Bail Reform Act's detention provisions seem to draw an important distinction between nonappearance risk broadly and risk of flight more specifically."). And in the interests of issuing an order where time is of the essence (with Defendant remaining in custody only pursuant to a now-relatively lengthy stay of the Magistrate Judge's release order), the Court also relies on and would incorporate by reference Professor Gouldin's cogent analysis of this issue in her helpful article. As Professor Gouldin explains at the article's outset:

> [I]t is clear that flight and nonappearance are not simply interchangeable names for the same concept, nor are they merely different degrees of the same type of risk. In the context of measuring and managing risks, many defendants who merely fail to appear differ in important ways from their fugitive cousins. Precision about these distinctions is constitutionally mandated and statutorily required."

Gouldin, *supra* note 4, at 677.

As she notes, "little attention has been devoted to defining flight risk and to distinguishing flight from other types of nonappearance." *Id.* at 685. Thus, "there is little focus on one central question: the appropriate meaning and role of what is often called 'flight risk.'" *Id.* at 682. The Court agrees and thus perceives that it is writing on a largely blank slate with respect to the meaning of "flight risk." The Court's challenge in crafting a definition is compounded by the fact that no single particular definition stands out as obviously correct. In this vacuum, the Court deems

it appropriate to adopt a definition that incorporates a very broad notion of "flight": *a risk that the defendant will intentionally avoid appearing in court as required*. Notably, this definition is broader than, for example, the one that is seeming suggested by Professor Gouldin. *See id.* at 677 (defining "true flight risk" as "the risk that a defendant will flee the jurisdiction."). Her definition suggests a geographic limitation on the concept of "flight," whereby "flight" involves not just (intentional) avoidance of court proceedings, but actual egress from the jurisdiction in which the court is located. The Court will not impose such a limitation on its definition, which includes a risk of the defendant intentionally avoiding court proceedings while yet remaining (actually or at least metaphorically "on the run") within the jurisdiction.

Though broader than Professor Gouldin's, this definition is narrower than the concept of the risk of non-appearance generally, which encompasses a risk of non-intentional failures to appear. This distinction well could matter in a particular case. For example, the latter risk, but not the former risk, would encompass the risk that a defendant released to reside before trial in a location relatively far from the jurisdiction would (for any number of reasons) unintentionally fail to make it back to the jurisdiction for court proceedings. This example is relevant to the instant case because it means that the Government cannot predicate a (serious) risk of flight on the sheer fact that Houston is a long way from Nashville and that therefore Defendant may simply prove unable to arrange to travel back to Nashville to timely arrive for court proceedings.

4. The court can make its determination as to whether the case involves a "serious risk of flight," either before the detention hearing or at the detention hearing.

The question then arises as to when the Government can or must meet its burden to show, by a preponderance, that the defendant's case involves a serious risk that he will intentionally avoid appearing in court as required. A case like *Wright* suggests that the Government can, or perhaps even must, meet that burden before the detention hearing itself. *Salgado* suggests that the

Government indeed must meet its burden before the detention hearing can proceed. This makes sense because, as discussed above, a motion under Section 3142(f)(2)(A) actually is primarily a motion for a detention hearing, such that the right to have such a hearing can or perhaps even must be established before the motion is granted and the hearing held.

On the other hand, other cases suggest that the showing can be made at the detention hearing itself. In this sequencing, one may think of the detention hearing being granted, subject to essentially a retroactive finding that the hearing eventually proved unauthorized in the first place—and that therefore the motion for detention fails at step one irrespective of what the court could find were it to proceed to step two. This appears to be the gist of, for example *Mendoza-Belleza* and *Friedman*. This makes sense because, it stands to reason, the best way to assess whether the case involves a serious risk of flight is via an actual hearing (with live testimony), not via pre-hearing filings with mere proffers of information or (surely generally self-serving) declarations not subject to cross-examination.

Ultimately, the Court cannot conclude that the Government should be deprived of the opportunity to establish, at the detention hearing itself, satisfaction of one of the two required steps for obtaining the detention order it seeks. This means, in this case, that the Court will do what the court did in, for example, *Mendoza-Balleza*: examine whether the evidence introduced at (or before) the detention hearing shows that the Government has met its burden of satisfying step one by showing by a preponderance a serious risk of flight.

One final point on how, in the Court's view, it should proceed. The ability of conditions of release to mitigate the risk of non-appearance is necessarily considered at step two (if it is reached), but it should not be considered at step one, in the Court's view. As discussed herein, showing at step one a serious risk of flight is more challenging for the Government than is showing at step

two a risk of non-appearance. But the difficulty should not be compounded by requiring the Government to show that there is a serious risk of flight *even considering* possible conditions of release. In the Court's view, it makes no sense to assess the Government's right to even have (or have had) a detention hearing based in part on possible conditions of release that would be raised, if at all, only at the detention hearing. The Court perceives the Government's burden as showing a serious risk of flight *in the absence* of any conditions of release, so that a defendant cannot rely at step one on the claim that such risk *would be* rendered less serious (or less than serious) by conditions of release that would be considered at step two.[16]

5. <u>In this case, regardless of whether the Government showed that a risk of non-appearance that could not adequately be mitigated by conditions of release, the Government failed to show that this case involved a "serious risk of flight" as defined herein.</u>

With the above protocols having been prescribed, the Court applies them to the record in the instant case. In support of its Motion for Revocation (and underlying Motion for Detention), the Government relies on: (i) the fact that the charges in this case are serious charges with serious potential penalties; (ii) the fact that Defendant is charged in this case with the same kind of offense conduct for which he has been charged (based on alleged events on May 6, 2020) in a pending case in Oklahoma, thus supposedly indicating Defendant's "blatant disregard for the law"; (iii) the fact that Defendant stands charged in Galena, Texas with evading arrest; (iv) the fact that the incident reports in the Oklahoma case show that, as the Magistrate Judge put it, "the four suspects fled from law enforcement on foot [and that Defendant] . . . was apprehended and spoke to officers about where he had hidden in that pursuit" (Doc. No. 59 at 48); (v) the fact that Defendant was

---

[16] On the other hand, if the Government (citing changed circumstances) brings a motion for detention under 18 U.S.C. § 3142(A)(1) for a defendant previously released on conditions, it would be appropriate to consider the *existing* (as opposed to *hypothetical future*) conditions in determining whether there is (currently) a serious risk the defendant will flee. *See Madoff*, 586 F. Supp. 2d at 248.

on pretrial release in the Oklahoma case (as well as two others) at the time of the occurrence of the events alleged in the criminal complaint in this case; (vi) the fact that Defendant lacks community ties in this district, even if he does have community ties in Houston, Texas;[17] (vii) Defendant's criminal history, namely various arrests in Texas, Georgia and California; (viii) Defendant's failure to appear in court in Georgia; and (ix) Defendant's allegedly poor record of compliance with conditions of pretrial release.

Just as the Magistrate Judge, looking only at step two, called this decision a close one, (*id.* at 64), the Court finds the decision on step one a close one. But ultimately, even though this case involves some degree of risk that Defendant will flee, the Court finds that the risk does not rise to the level of "serious." Reasonable minds could differ on this point—not least because reasonable minds could differ as to what "serious" means in this context—but ultimately the Court has to call it like it sees it. And keeping in mind that *every* case involves some degree of flight risk, and that the Bail Reform Act nevertheless favors release, the Court finds that the Government has not met its burden to show a "serious risk of flight" as required for it to obtain a detention hearing in the first place. In so finding, the Court has considered each of facts on which the Government relies. Crucially, to say that they are relevant to factors specifically identified by statute as relevant to the step two inquiry, *see* 18 U.S.C. § 3142(f), is not to say that they necessarily are very probative at step one's inquiry into risk of flight.

---

[17] The parties hotly contest whether community ties in Houston are relevant, or whether instead only Defendant's community ties (or lack thereof) in this district are relevant. But their discussion is really geared towards step two, and the Court takes no position on the relevance as to step two. Instead, as indicated below, it considers the relevance of community ties to Houston only as they specifically relate to step two.

The charges in this case indeed are serious.[18] charges with serious potential penalties. But federal crimes are generally serious with serious penalties, and yet under the Bail Reform Act release is generally favored in federal criminal cases—as it should be, since locking up persons prior to conviction should be something of a last resort. And in the realm of federal crimes, the seriousness here by no means stands out.

In relying on the disregard for the law allegedly reflected by the fact that Defendant is charged in this case with the same kind of offense conduct for which he has been charged in a pending case in Oklahoma, the Government does not get far. The relationship between such disrespect (even assuming that the Court could find such disrespect by concluding for present purposes that Defendant had in fact committed both crimes) and a risk of flight is not identified by the Government. If the supposed relationship is that a defendant's repeated commission of the same kind of offense suggests a kind of disrespect for the law that would manifest itself in the Defendant violating the law (and conditions of release) specifically by bail jumping,[19] the Court declines the suggestion; it is too general, and would result in the Court finding risk of flight more likely in all of the numerous cases in which the defendant has in the past engaged repeatedly in the same kind of criminal conduct for which he or she currently stands charged. In the Court's view, disrespect for the law more likely could suggest enhanced dangerousness, and it could suggest a diminished likelihood of complying with conditions of release as a general matter. But as explained herein, neither a risk of dangerousness nor a likelihood of complying with conditions of release is relevant here.

---

[18] The Court notes that nothing herein in meant to diminish the brazenness, greed and selfishness that at first glance appears to be reflected in the crimes with which Defendant is charged (but of which is currently presumed innocent).

[19] By "bail jumping," the Court here refers to 18 U.S.C. § 3146, which makes it a federal crime to, *inter alia*, "fail[ ] to appear before a court as required by the conditions of release." 18 U.S.C. § 3146(a)(1).

The fact that Defendant stands charged in Galena, Texas with evading arrest does not exactly help Defendant's position. But it appears that at this juncture it is merely alleged that Defendant evaded arrest; the Court has no basis for concluding, or even assessing the likelihood, that he actually did so. Moreover, there is a difference between someone being inclined to avoid being caught in the act and someone, once caught and brought before the court, being inclined to jump bail and live as what is, for all practical purposes, a fugitive. Both are poor and foolish choices. But they are significantly different choices.

The incident reports in the Oklahoma case indicating that Defendant fled and hid from officers likewise do not exactly help Defendant. But as far as the Court can tell, these incident reports are unsworn and certainly not subject to cross-examination, so the Court can give them only so much weight. And again, even if Defendant in the heat of the moment sought to avoid being caught in the act, that does not necessarily mean that he is inclined to jump bail and live as a fugitive.

That Defendant was on pretrial release in the Oklahoma case (as well as two others, apparently) at the time of the occurrence of the events alleged in the criminal complaint in this case, once again, is a fact not helpful to Defendant. But even if one assumes for present purposes that Defendant in fact did commit the instant crime, the fact that he did so while on supervised release goes more to whether he would comply with conditions of release necessary to mitigate his risk of non-appearance and danger to others and the community, and less to whether he poses a risk of fleeing, *i.e.*, intentionally not showing up for court in this district.

The fact that Defendant lacks community ties specifically in this district may be probative of his risk of unintentional non-appearance in this district, but it is not very probative of whether he would intentionally not show up here and instead choose the path of a fugitive. Relatedly, given

the Court's definition of risk of flight, the Government (and Court) cannot rely on the notion that Defendant residing pre-trial in Houston pending trial would pose a risk of Defendant's *non-intentional* failure to appear for court in Nashville. This is important because the sheer distance between the two cities indeed increases the risk of unintentional non-appearance (due to, for example, lack of funds or wherewithal in travel arrangements); this distance could help the Government on the risk of non-appearance if such risk were at issue here—but the risk at issue here is risk of *flight*. And on that issue, community ties *anywhere* in the United States support Defendant's position here because, to the extent that a defendant has community ties *somewhere* in this country, the defendant is less likely to choose the path of a fugitive reflected by a decision intentionally not to appear in court in a federal criminal case wherever it is pending.

Defendant's criminal history apparently thus far involves only arrests, and no convictions. (Doc. No. 60 at 9). The locations of the arrests show that Defendant has had the ability to travel, but that is not very probative of whether he would choose to travel specifically in order to avoid appearing in court in this case.

Defendant's failure to appear in court in Georgia (on a minor charge) is yet another fact that hardly helps Defendant. But there are many possible reasons for a criminal defendant's non-appearance, and Defendant has proffered one that is both exculpatory and not so far-fetched: that he was unaware that the court appearance was scheduled. It does not appear that the Government has shown that Defendant actually received notice or has otherwise debunked this explanation. Ultimately, the Court cannot conclude that his non-appearance was intentional. The Court finds, as did the Magistrate Judge, that it is more probative that Defendant *has* appeared in court in in his Oklahoma case at least three occasions (Doc. No. 60 at 12). This, coupled with the absence of any

indication of any failure to appear in the Oklahoma case, indicates that he would not fail to appear as required in this case—let alone *intentionally* fail to appear.

Finally, as for Defendant's allegedly poor record of compliance with conditions of pretrial release,[20] it would indeed be relevant to whether any conditions of release in this case could adequately mitigate the risk of his non-appearance. This is because to the extent that the Court deems it unlikely that a defendant would comply with conditions of release, the Court deems it unlikely that conditions of release would serve their vital function of mitigating the risk of non-appearance. But here, at step one, the Court is not even considering any potential conditions of release, but rather is assessing the risk of flight irrespective of the ability of any potential conditions of release to reduce that risk.[21]

Considering all of the above collectively, the Government has shown some risk of flight. But in the Court's view, the Government has not shown a risk that, by a preponderance, rises to the level of "serious" so as to entitle the Government to a detention hearing in the first place as required by step one of the applicable analysis. For this reason, the Court need not reach the Magistrate Judge's basis for denying the Motion for Detention, *i.e.*, its step-two determination that the Government had not shown by a preponderance that there is no combination of conditions that would reasonably assure the appearance of Defendant as required.

<u>CONCLUSION</u>

Given Defendant's primary argument in opposition to the Motion for Revocation, the Court has endeavored to lay out the framework for, and then conduct *de novo* in this particular case, the

---

[20] The Court here says "allegedly" because apparently the alleged non-compliance consists of crimes that have been charged but not yet proven (or admitted by Defendant).

[21] This actually is to the Government's advantage because, as noted above, it means that the Court will not even consider the possibility, at step one, that particular conditions of release will diminish the seriousness of any risk of flight.

proper analysis for a motion for detention. So doing has required the Court to answer fairly novel questions about the proper protocols in situations where, as here, a defendant claims that the Government is not even entitled to a detention hearing in the first place. Calling it like it sees it, the Court has answered those questions and then applied what it believes to be the proper analysis. And the analysis reveals that the Motion for Revocation (Doc. No. 52) and, thus, the underlying Motion for Detention (Doc. No. 6), must be denied.

An appropriate order, providing *inter alia* for Defendant's release under the conditions announced by the Magistrate Judge in open court on May 12, 2021, will be entered.[22]

Eli Richardson

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[22] The Court believes that it can order conditions of release—including special conditions of release—even though it does not reach the question of whether particular conditions of release are required to adequately minimize the risk of non-appearance. Such an approach seems prudent, in keeping with the Bail Reform Act, and consistent with the Sixth Circuit's instruction to the district court in *Hardon* "to set conditions of release" on remand even though the district court was held not to have been authorized to address this same question. *See* 1998 WL 320945, at *1.